**H.B. HALICKI, d/b/a H.B. Halicki Productions, Plaintiff/Appellant,**

v.

**UNITED ARTISTS COMMUNICATIONS, INC; Mann Theaters Corp.; Pacific Theatres Inc.; Edwards Theaters, Inc., Defendants/Appellees.**

No. 86–5594.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 2, 1987.

Decided March 17, 1987.

Christopher Layne, Los Angeles, Cal., for plaintiff/appellant.

Richard L. Grossman, San Francisco, Cal., for defendants/appellees.

Before SNEED, FARRIS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

H.B. Halicki, d/b/a H.B. Halicki Productions (Halicki) brought this suit against United Artists Communications, Inc. and various theatres (the defendants), alleging, in addition to claims for breach of contract and violation of the Sherman Act, a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). This appeal is addressed solely to the district court's award of summary judgment to the defendants on the Lanham Act claim. At the heart of the case is the question whether or not the Lanham Act is to be expanded to include the kind of wrong alleged by Halicki.

Halicki produced "The Junkman", a film in the "adventure" category, featuring spectacular automobile chases and collisions. It was designed to appeal largely to teenagers and young adults. According to Halicki's allegations, its commercial success was closely connected with a PG rating from the Motion Picture Association of America, meaning that some material in the film might not be suitable for children, since parents should make inquiries and give guidance before the children attend it, although the film as a whole was not unsuitable for children. The plaintiff and the defendants, again according to the allegations, agreed that the PG rating had been awarded and that all advertising of the film would reflect this rating. However, each defendant advertised the movie as rated R, indicating that the motion picture was unsuitable for children and young adults and that no one under the age of 18 should be admitted to watch it. The injury alleged under the Lanham Act is the false description of "The Junkman" as an R rated picture with disastrous box office consequences for the film.

The question presented is one of first impression. Halicki relies on the trend to expand the Lanham Act that has been apparent ever since the landmark decision of Judge Hastie in *L'Aiglon Apparel v. Lana Lobell*, 214 F.2d 649 (3rd Cir.1954). Indeed, in the last decade, there has been "an explosion" of cases brought under the Act. Bauer, "A Federal Law of Unfair Competition: What Should be the Reach of Section

43(a) of the Lanham Act?," 31 UCLA L.Rev. 671, 752 (1984). This author, who urges an expansive reading, notes that the Lanham Act is experiencing "a mid-life crisis." *Id.* at 671.

Cases exist which, removed from their particular factual setting, support Halicki's claim that it is enough for him to show that the defendants made a false representation about his film and that he was injured by the representation. For example, in *Gilliam v. American Broadcasting Co.*, 538 F.2d 14, 24 (2nd Cir.1976) it was held that the Monty Python group stated a claim under Section 43(a) when they alleged that the American broadcasters of their show had mutilated their film by cutting out some of the bolder and raunchier language ("rare brand of humor" in the words of the court) that constituted their charm to their followers. Although there was no allegation of competition between the American company and the Monty Python group it appeared to the court that there was injury to the reputation of the plaintiff. As far as relying on the language of the statute went, the court found that the American version created a false impression of the product's "origin." *Id.*

Closer to home is *Smith v. Montoro*, 648 F.2d 602 (9th Cir.1981). Here one Paul Smith had contracted to star in a film and receive star billing. The distributors removed his name from the film ("Convoy Buddies") and substituted the name of Bob Spencer. Smith sued under Section 43(a) and we reversed a district court's dismissal of his complaint for failure to state a cause of action. The court did not find Smith in any way in competition with the distributors but nonetheless characterized their action as a form of "reverse passing off" and as such actionable under Section 43. *Id.* at 607.

Undeniably if the Monty Python case and the *Smith* case are extended, Halicki has made out a plausible case. Like Smith he has been injured by a misdescription of a movie. Like the Monty Python group his work has been mutilated by the misdescription. His case is further strengthened if we should read "competition" in the Lanham Act in the Pickwickian way it is suggested that the term has already been read in relation to trademarks. See McCarthy, *Trademarks and Unfair Competition*, 1984 ed. § 24.4B.

The statute does not permit us to accept Halicki's invitation. The final section of the Lanham Act—in a passage unusual, and extraordinarily helpful, in declaring in so many words the intent of Congress— states that "the intent of this chapter is to regulate commerce within the control of Congress ... to protect persons engaged in such commerce against unfair competition." We quote the operative language. The rest of the declaration of intent relates to the use of trademarks and is not relevant here. The statute is directed against unfair competition. To be actionable, conduct must not only be unfair but must in some discernible way be competitive. In oral argument, Halicki suggested that United Artists Communications in fact had films competitive with his which would have benefited by decreasing the box office attraction of his. The films were not identified. They were not a part of his case and reference to them came too late to save it. Halicki failed to show injury by a competitor.

If Section 43(a) is not confined to injury to a competitor in the case of a false designation, it becomes a federal statute creating the tort of misrepresentation, actionable as to any goods or services in commerce affected by the misrepresentation. As one treatise suggests, the Lanham Act then would be similar to French, German and Swiss law where, by virtue of a general code clause, in any suit in tort or contract the violation of good morals may become an issue. Broadening the Act from unfair competition to unfair trade "is equivalent" to the complete dilution of the concept of unfair competition. Callmann, *Unfair Competition, Trademarks and Monopolies*, (1981 ed., 1986 supp.) § 209.

Adhering to the statutory language, we do not find conduct actionable under Section 43(a). *Cf. U–Haul International v. Jartran, Inc.*, 681 F.2d 1159 (9th Cir.1982) (injury by a competitor) *See Alfred Dun-*

*hill Limited v. Interstate Cigar Company, Inc.,* 499 F.2d 232 (2nd Cir.1974) (Lanham Act not designed to cure all conceivable commercial evils). Halicki, if his allegations are correct, may have a remedy in contract. We will not mutilate a federal statute and frustrate express congressional intent by giving him a forum here.

United Artists Communications asks for attorney's fees, but its contract with Halicki provides for attorney's fees only if it "institutes legal proceedings to enforce its right." The clause is inapplicable where it is a defendant.

**AFFIRMED.**