**Sheilah GUARINO, Plaintiff,**

v.

**SUN COMPANY, INC., et al., Defendants.**

**Civ. No. 92–1357(JEI).**

United States District Court, D. New Jersey.

April 26, 1993.

....

**406**

John F. Innelli, Rudolph, Seidner, Goldstein, Rochestie, Salmon & Dorian, P.C., Philadelphia, PA, Joseph J. Baldassari, Heaney, Kilcoyne & Furey, Mt. Laurel, NJ, for plaintiff.

Nicholas M. Kouletsis, Pepper, Hamilton & Scheetz, Westmont, NJ, for defendants.

## OPINION

IRENAS, District Judge.

This case raises the issue of whether § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1988), grants standing to a retail purchaser of consumer goods, in this instance gasoline from the pump, from a seller who engages in misrepresentation or false advertising with respect to the quality or characteristics of such goods.

Plaintiff, Sheilah Guarino,[1] alleges that she purchased Sunoco Ultra® high-octane gasoline as a result of advertising that claimed it gave cars better acceleration, and maximum power and performance. Because Ultra® is higher in cost than other Sunoco products offered at the pump and because it is alleged that the advertising was false, and known to be false by Sunoco, plaintiff claims that she was damaged by the price differential between Ultra® and less expensive gasolines.

This matter comes before the court on defendants' motion for summary judgment under Fed.R.Civ.P. 56(c). Defendants' sole basis for this motion is that plaintiff, as a consumer, lacks standing to bring her claim under § 43(a) of the Lanham Act (the "Act").

Under Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has stated that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted) (internal quotations omitted).

■ On motion for summary judgment, standing may be as properly raised as any other dispositive legal issue. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 65–66, 108 S.Ct. 376, 385–386, 98 L.Ed.2d 306 (1987). If the court determines that as a matter of law the plaintiff lacks standing, no issue will remain for trial. Although plaintiff has asserted various state law causes of action, if she lacks standing under the Act, no source of federal jurisdiction will remain.[2]

The starting point for this analysis is with the intent of Congress in passing the Act.

---

1. Plaintiff sues not only on her own behalf, but on behalf of a putative class defined as:

   "All persons situated throughout the United States, its territories and possessions, who purchased during the time period April 2, 1989 through to the present Sunoco high-octane gasoline (excluding the defendants, their officers, directors, employees, agents, and members of their immediate families and all persons and entities who purchased such product for resale) and who were damaged thereby."

2. Plaintiff has not pled diversity of citizenship as a basis of federal jurisdiction. 28 U.S.C. § 1332.

In a class action plaintiffs are not allowed to aggregate the amount of their claims to satisfy the amount in controversy requirement. *In re School Asbestos Litigation,* 921 F.2d 1310, 1315 (3d Cir.1990) (citing *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973)). A calculation based on reasonable assumptions suggests that plaintiff Guarino would have to have driven millions of miles using Ultra® during the 21 month period alleged in the complaint to satisfy the $50,000 amount in controversy requirement.

Section 45 of the Act states explicitly that its purpose is to "regulate commerce" by making actionable the deceptive and misleading use of marks in commerce in order to protect marks and persons engaged in commerce against unfair competition.[3]

The ambiguity about consumer standing under § 43(a)[4] revolves around the question of what kind of commercial interests are protected by the statute. The Third Circuit has explained that:

> Section 43(a), on its face, recognizes two distinct classes of persons entitled to sue: (1) competitors—those doing business in the locality, and (2) non-competitors—those who believe they are somehow damaged by the false representations. The traditional plaintiff under section 43(a) has been a competitor who was injured in his line of business as a result of false advertising.

*Thorn v. Reliance Van Co.*, 736 F.2d 929, 931 (3d Cir.1984). Whether consumers are part of the non-competitor class of potential plaintiffs has been a subsidiary question suggested by several appellate opinions but only rarely addressed directly.

Virtually all of the courts that have considered what categories of plaintiffs have standing under § 43(a) have recognized, indeed emphasized, that that section was intended to protect commercial interests. In *Colligan v.*

*Activities Club of New York, Ltd.*, the first federal decision to hold that consumers do not have standing under § 43(a), the court observed, "The Act's purpose, as defined in § 45, is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct." 442 F.2d 686, 692 (2d Cir.1971).

Although the *Thorn* court criticized the *Colligan* opinion as contrary to the plain meaning rule, both courts agreed that the Act protects commercial interests. The *Thorn* court stated that whether a party has standing under § 43(a) "turns on whether the party 'has a reasonable interest to be protected against false advertising,'" 736 F.2d 929, 933 (3d Cir.1984), (quoting *Smith v. Montoro*, 648 F.2d 602, 608 (9th Cir.1981) (citations omitted)). Although not very analytically helpful, the key phrase in the cases appears to be "reasonable interest," meaning reasonable commercial interest. *See, e.g., Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.1992) (citing other authorities for the reasonable interest test).

The *Thorn* court held that a forty-five percent shareholder of a bankrupt trucking company, Florida–Eastern U.S. Van Lines, Inc., had standing to bring a claim under § 43(a) against one of the company's competitors for false advertising. *Thorn*, 736 F.2d at 933. The court reasoned that Thorn's

---

**3.** The relevant paragraph of Section 45, 15 U.S.C.A. § 1127 (West Supp.1993) states:

The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations.

**4.** Section 43(a)(1) of the Act as amended in 1988 provides: Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or

any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125(a)(1) (West Supp.1993) (1988 amendment effective Nov. 16, 1989) (text shown was not altered by 1992 amendment). With respect to the question of standing, the result of the 1988 amendment was no substantive change. *Serbin v. Ziebart Int'l Corp.*, 24 U.S.P.Q.2d 1957, 1960, n. 4. (W.D.Pa.1992).

interest derived from the contribution of his solely-owned booking agent business to the bankrupt carrier in addition to his status as a forty-five percent shareholder. *Id.*

In *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213 (9th Cir.1987), the court took a narrower view of the type of commercial interest necessary to establish standing. In *Halicki* the court stated, "The statute is directed against unfair competition. To be actionable, conduct must not only be unfair but must in some discernable way be competitive." *Id.* at 1214. The plaintiff, a film producer, sued the defendant theater companies for having erroneously advertised one of its PG-rated movies as being R-rated. Although the plaintiff clearly had a commercial interest in the proper promotion of its film, the court held the plaintiff lacked standing to assert a claim against the theaters under § 43(a) because it was not a competitor of the defendants. The court noted that, "[i]f Section 43(a) is not confined to injury to a competitor in the case of a false designation, it becomes a federal statute creating the tort of misrepresentation, actionable as to any goods or services in commerce affected by the misrepresentation.... Broadening the Act from unfair competition to unfair trade 'is equivalent' to the complete dilution of the concept of unfair competition." *Id.* (citing Callmann, *Unfair Competition, Trademarks and Monopolies*, (1981 ed., 1986 supp.) § 209).

In a thoughtful appellate decision on the subject, *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093 (9th Cir.1992), the court held that the type of interest necessary to establish standing under § 43(a) depended on which of the two "different prongs of § 43(a)" a plaintiff was relying. *Id.* at 1109. *Waits* described the two prongs of a § 43(a) action as (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's dis-

tinctive mark, name, trade dress, or other device ("false association"), or (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). *Id.* at 1108 (citation omitted).

Citing its earlier decision in *Halicki* as an example, the court explained that to bring a claim for false advertising the plaintiff must be a competitor. On the other hand, to bring a claim for false origin or association, which often involves the unauthorized use of a trade mark or trade name, a plaintiff need not be a competitor but must have a commercial interest in the product wrongfully identified or in the misused mark.[5] *Id.* at 1109. In short, under the *Waits* analysis the standard for standing is different for the two types of § 43(a) claims—with only competitors having standing to bring claims for false advertising.

Were we to adopt the *Waits* court's distinction it would be the end of our inquiry. Plaintiff would not have standing to challenge defendants' allegedly false advertising under § 43(a) because she is clearly not in competition with the defendants.

In a recent district court decision in this circuit, *Serbin v. Ziebart International Corp.*, 24 U.S.P.Q.2d 1957, 1959 (W.D.Pa. 1992) the court adopted the proposition that " 'standing under § 43(a) exists where the interest asserted by the plaintiff is a commercial interest protected by the Lanham Act.' " *Id.* at 1959 (quoting *Waits*, 978 F.2d at 1109). Although the court cited *Waits* approvingly, it did not specifically adopt the two prong analysis suggested by the Ninth Circuit.

In the absence of Third Circuit authority on the issue, we will not adopt the Ninth Circuit's dichotomy. The source of that court's conclusion, that only competitors have standing to bring claims for false advertising, is a portion of § 45 which the court quoted:

---

5. The court cited *Smith v. Montoro*, 648 F.2d 602 (9th Cir.1981), and *Dovenmuehle v. Gilldorn Mort'g Midwest Corp.*, 871 F.2d 697 (7th Cir. 1989) as examples of false association/false origin cases. In *Smith* the court held that the plaintiff actor had standing to sue the defendant film distributor for replacing his name with that of another actor because he had a commercial interest in receiving accurate credit for his work

despite his not being a competitor with the defendant. 648 F.2d at 608. In *Dovenmuehle*, by contrast, the court held the plaintiff family did not have standing because they no longer had any commercial interest in the tradename, "Dovenmuehle," having conveyed their entire interest in the business that used that trade name. 871 F.2d at 701.

"the intent of this chapter is to regulate commerce within the control of Congress ... to protect persons engaged in such commerce against unfair competition." *Halicki,* 812 F.2d at 1214. The *Waits* court also cited Thomas McCarthy, *Trademarks and Unfair Competition* §§ 27:2–27:4 (2d ed. 1984) for its discussion of the two prongs of § 43(a), but in the 1992 edition McCarthy states flatly that both prongs "share the same criteria" as to jurisdiction, remedies and standing to sue. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27.02[3], at 27–17 (3d ed. 1992).

■ Since its decision in *Thorn,* 736 F.2d 929, the Third Circuit has not addressed standing under the Lanham Act,[6] and has discussed the purpose of the Act only once. In *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222 (3d Cir. 1990), the court stated that the Act is primarily intended to protect commercial interests. *Id.* at 230. The court explained further that "[a] competitor in a Lanham Act suit does not act as a vicarious avenger of the public's right to be protected against false advertising." *Id.* (citation and internal quotation marks omitted). It follows that the Third Circuit would probably not consider the public's interest in protection from false advertising to be a "reasonable interest" to be protected by the Act as that standard was articulated in *Thorn,* 736 F.2d at 933.

In *Serbin,* the court was asked to decide whether consumers who purchased the defendant's automobile rust protection service had standing to assert a claim under § 43(a). 24 U.S.P.Q.2d 1957, 1958 (W.D.Pa.1992). The plaintiffs asserted that they had purchased defendant's service because of the allegedly false claim in its advertisements that its "Super Rust Protection" provides

protection against rust which is not covered by manufacturers. *Id.*

After reviewing most of the same case law discussed above, the court criticized *Maguire v. Sandy Mac, Inc.,* 138 F.R.D. 444, 447 (D.N.J.1991) ("*Maguire I*"), which held that consumers who had purchased mislabeled ham had standing to sue the wholesaler under § 43(a). The *Serbin* court specifically disagreed with the conclusion that the ultimate consumers of ham would have a reasonable interest in protection from commercial misrepresentations within the Third Circuit's contemplation of the "reasonable interest" test. *Serbin,* 24 U.S.P.Q.2d at 1959.

Subsequent to the initial partial grant of the plaintiffs' motion for class certification in *Maguire I,* the court granted defendant's later motion to decertify the class. *Maguire v. Sandy Mac, Inc.,* 145 F.R.D. 50 (D.N.J. 1992) ("*Maguire II*"). Although it did not reach the issue of consumer standing under § 43(a) in *Maguire II* because the plaintiff class was decertified, the opinion noted that the Third Circuit had not directly addressed the question and expressed doubt about consumer standing. The court stated that such an extension of the Act would run the risk of converting the federal courts into a "veritable small claims court." *Maguire II,* 145 F.R.D. at 53–4.[7]

With the issue now squarely raised we agree with the court's conclusion in *Serbin* 24 U.S.P.Q.2d at 1960, that plaintiffs solely as consumers are "devoid of any existing or potential commercial interest," and do not have standing under § 43(a). In this case the only asserted interest of the plaintiff and putative class [8] is to be free of misleading advertising which allegedly induced them to unnecessarily purchase high-octane gasoline.

To accept plaintiff's argument would be to convert the Lanham Act from a regulation of commercial interests and unfair competition

---

**6.** In *Ditri v. Coldwell Banker,* 954 F.2d 869 (3d Cir.1992), the court declined to consider the standing issue although suggesting that lack of standing was a possible implication of the district court's dismissal. *Id.* at 872. The court affirmed the dismissal for failure to meet the requirements of a false advertising claim. *Id.*

**7.** At least one member of Congress, Representative Hamilton Fish, shared and stated this concern during the debates over the 1988 amend-

ment. 134 Cong.Rec. H10,419, 10,423 (daily ed. Oct. 19, 1988) (statement of Rep. Fish).

**8.** After the defendants filed the instant motion for summary judgment, the plaintiff filed a class certification motion. Because the court concludes that the defined members of the class, *see* note 1 *supra,* would lack standing, the motion for class certification is moot.

to a catchall consumer protection statute that could apparently be used to challenge any allegedly misleading advertising. While such an expansion of the Act's coverage may be desirable,[9] that is for Congress, not this court, to decide.[10]

Having found that plaintiff lacks standing to assert a claim under the Lanham Act, and there being no other federal claims presented, this court may no longer exercise jurisdiction over this matter. See, e.g., Serbin 24 U.S.P.Q.2d at 1960. Accordingly the case will be dismissed without prejudice.

The court will enter an Order conforming with this opinion.

---

9. The court is aware that some commentators have argued in favor of consumer standing either as a matter of judicial interpretation or legislative clarification. See, e.g., Arthur Best, Controlling False Advertising: A Comparative Study of Public Regulation, Industry Self–Policing, and Private Litigation, 20 Ga.L.Rev. 1, 66–68 (Fall 1985); See also False Advertising Claims and the Revision of the Lanham Act: A Step in Which Direction? 59 Cin.L.Rev. 957, 960–67 (Winter 1991).

10. The court is aware that Third Circuit jurisprudence approaches issues of statutory interpretation by first asking if the statute in issue is "ambiguous." See, e.g. Mellon Bank v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980). If the language is deemed clear and plain it is given effect without regard to legislative history. However, the Third Circuit has identified two circumstances in which it is proper for the court to consider factors beyond the plain English meaning of the words used in the statute. The first is when a literal reading "will produce a result demonstrably at odds with the intention of [the] drafters...." Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). The second sends plain meaning to petition if it "would thwart the obvious purposes of the ... [statute]." Mansell v. Mansell, 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989). Both cases are cited in Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 910 (3d Cir.1990). A very recent application of this means of avoidance can be found in Legacy, Ltd. v. Channel Home Centers, Inc., 989 F.2d 682, 687–688 (3d Cir.1993). The court feels that, taken together, Sections 45 and 43(a) are ambiguous, but even if one can ascribe a "clear and plain" meaning to the words, the interpretation sought by plaintiff would produce a result demonstrably at odds with Congress' intent in passing the Lanham Act.