Phyliss Ann LOY and Thomas Loy

v.

ARMSTRONG WORLD INDUSTRIES, INC.

Civ. No. 93–2280.

United States District Court, E.D. Pennsylvania.

Nov. 15, 1993.

Joseph C. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Barry F. Greenberg, Barry F. Greenberg & Assoc., P.C., Bridgeport, PA, for plaintiffs.

Ira P. Tiger, Schnader, Harrison, Segal & Lewis, J. Gordon Cooney, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, Michael I. Otchet, Armstrong World Industries, Inc., Lancaster, PA, for Armstrong World Industries, Inc.

J. Gordon Cooney, Jr., Morgan, Lewis & Bockius, Frank C. Bender, Deasey, Mahoney, Bender & McKenna, Ltd, Philadelphia, PA, Alfred B. Adams, III, Branch, Pike & Ganz, Tanya M. Ashley, Eileen M. Crowley, Branch, Pike & Ganz, Atlanta, GA, for Coronet Industries, Inc.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Presently before the court is a motion by the defendant, Armstrong World Industries, Inc. ("Armstrong"), to dismiss the amended complaint. For the reasons discussed below, the court will grant Armstrong's motion and dismiss the complaint without prejudice to the Loys' right to pursue this action in state court.

## STANDARD FOR REVIEW

*Dismissal Under Rule 12(b)(6)*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In reviewing a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *See Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). A complaint does not need to contain a lengthy recitation of the facts to withstand a motion to dismiss. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977). All a plaintiff must do in his complaint is give a "short and plain statement of the claim that will give each defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. at 102. Therefore, the court must accept the facts contained in plaintiffs' complaint as true.

## BACKGROUND

The class action complaint was filed on April 29, 1993. An amended class action complaint was filed on July 1, 1993. One of the original plaintiffs in this action was Carrie Hayes and one of the original defendants was Coronet Industries, Inc. ("Coronet"). On June 2, 1993, Coronet filed a motion to transfer venue to Georgia. On July 27, 1993, the court, on request of Coronet and with no

objection by plaintiffs, severed the action by Hayes against Coronet from this civil action. The severed action was consolidated into a related civil action captioned *Howell, et al. v. Shaw Industries, Inc. et al.*, 93–cv–2068, 1993 WL 387901. When Coronet was severed and then consolidated with another case, its motion to transfer venue was also severed with it. No party other than Coronet has ever filed a motion to transfer the venue of this civil action.

On September 29, 1993, the court transferred the *Howell* action along with *McBride, et al. v. Galaxy Carpets, et al.*, 93–cv–2638, 1993 WL 387901, to the United States District Court for the Northern Division of Georgia, Rome Division. The court did not transfer the Loys' action to Georgia because none of the remaining parties filed a motion to transfer venue.

The only remaining parties in this civil action are the plaintiffs Phyliss Ann Loy and Thomas Loy and the defendant Armstrong. All of the remaining parties reside within the Commonwealth of Pennsylvania.

The Loys' class action complaint alleges that Armstrong is in the business of manufacturing, designing, selling, distributing, marketing and warranting rugs, carpeting and the materials used to install carpets. Am.Compl. ¶ 3. Included in the installed carpeting is the backing, binding, padding or cushioning, adhesives and sealants. Am.Compl. ¶ 7. "Carpeting" as used in this memorandum encompasses all of the above listed components.

The Loys' class action complaint alleges that Armstrong's carpeting contains chemical additives and treatments used in the manufacturing process. Am.Compl. ¶ 8. The Loys assert that the chemical additives and treatments in Armstrong's carpeting are toxic. Am.Compl. ¶ 10. Over time, the Loys believe that the carpeting emits these toxic substances into the air. Am.Compl. ¶ 14. As a result of these emissions, the Loys allege that the toxic substances are absorbed into the human body through the lungs and the mucous membranes or by direct contact with a person's skin. *Id.* The Loys assert that because of exposure to the defendant's carpeting, people suffer the following adverse physical conditions: respiratory illness; headaches, sleeplessness and fatigue; nausea; vomiting; skin rashes; eye, ear and throat irritation; development of immune system problems; and aggravation of previous existing conditions. Am.Compl. ¶ 16. No specific ailment has been attributed to the Loys.

The Loys believe and aver that the carpeting industry has known since 1980 about the negative health effects associated with exposure to toxic substances contained in carpeting. Am.Compl. ¶ 30. Despite this knowledge, they alleged the defendant has failed to disclose or warn about these possible dangers. *Id.* The Loys have brought this suit individually and on behalf of the class of people who purchased carpeting defined above since January 1, 1980. Am.Compl. ¶ 35. The Loys allege that the members of the class could exceed one-hundred thousand (100,000) people, with a personal injury subclass number exceeding one thousand (1,000). Am.Compl. ¶ 36.

The Loys allege a federal claim based on the Lanham Act. The Loys attempt to invoke the court's supplemental jurisdiction for their Magnuson–Moss Act claim as well as their alleged state law claims based upon failure to warn (strict products liability), negligent and intentional misrepresentation, defective design and/or manufacture and violations of state consumer protection laws. The court has federal question jurisdiction over this action pursuant to the Lanham Act. Since all of the remaining parties are citizens of the Commonwealth of Pennsylvania, no diversity jurisdiction exists.

## DISCUSSION

Armstrong contends that this action should be dismissed on two grounds. First, the Loys have no standing to assert their federal claim based on the Lanham Act. Second, even if the Loys do have standing, they have failed to adequately allege a Lanham Act violation. Armstrong argues that if either contention has merit, the court would no longer have federal jurisdiction and it should not exercise its supplemental jurisdiction

over the Loys other claims. The court will examine each contention *in seriatim.*.

(a) *Standing Under the Lanham Act*

■ The Lanham Act is primarily intended to protect commercial interests. *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 230 (3d Cir.1990). Section 43(a) of the Lanham Act provides that:

> Any person who on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or' another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Armstrong argues that Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), does not confer standing to a retail purchaser of consumer goods, in this instance carpeting, from a seller who allegedly engages in misrepresentations or false advertising concerning the quality or characteristics of the goods.

■ The leading case that holds that consumers do not have standing under Section 43(a) is *Colligan v. Activities Club of New York, Ltd.,* 442 F.2d 686 (2d Cir.), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971). This case is the one federal court of appeals decision that involved the clear-cut issue of whether pure consumers have standing under Section 43(a). The Second Circuit stated that "the Lanham Act of 1946 has a very long and convoluted legislative history, which with respect to § 43(a) we find to be inconclusive and therefore of little or no help in resolving the issue decided today." *Id.* at 690. The *Colligan* court then examined the legislative purposes of the Lanham Act found in Section 45, 15 U.S.C. § 1127. Section 45 provides that:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; ... to protect persons engaged in such commerce against unfair competition ...

15 U.S.C. § 1127. The *Colligan* court reasoned that absent a specific reference to consumer or public, the congressional intent behind Section 43(a) "was to create a special and limited unfair competition remedy, virtually without regard to the interests of consumers generally and almost certainly without any consideration of consumer rights of action in particular." *Colligan,* 442 F.2d at 692. The Second Circuit also stated that if Congress had contemplated the major change urged by the appellants and bestowed standing under Section 43(a) on pure consumers, it would have done so explicitly. *Id.* at 694. Moreover, because of its fears that an expansive reading of Section 43(a) would lead to a veritable flood of claims in the federal courts, the *Colligan* court refused to extend standing under the Lanham Act to consumers.

In *Thorn v. Reliance Van Co.,* 736 F.2d 929 (3d Cir.1984), the Third Circuit was asked to decide if a plaintiff who was an investor that participated in the formation of a new company by transferring his exiting business into the new company had standing under Section 43(a). The Third Circuit in *Thorn* criticized the *Colligan* holding as being contrary to the plain meaning rule of statutory construction enunciated by the United States Supreme Court. *Thorn* 736 F.2d at 932. Having criticized *Colligan,* the Third Circuit explained that on its face, Section 43(a) entitles two distinct classes of persons to sue: (1) competitors—those doing business in the locality, and (2) non-competitors—those who believe that they are somehow damaged by the false representations. *Id.* at 931. After deciding that non-competi-

tors have the right to relief under Section 43(a), the Third Circuit held that the dispositive question as to a party's standing under Section 43(a) "turns on whether the party 'has a reasonable interest to be protected against false advertising.'" *Id.* at 933, *quoting, Smith v. Montoro,* 648 F.2d 602, 608 (9th Cir.1981). The Third Circuit believed that the "reasonable interest" requirement "would eliminate frivolous claims and prevent flooding the federal courts with Lanham Act claims contrary to the type envisioned by Congress." *Thorn,* 736 F.2d at 933.

The *Thorn* court never directly addressed the issue of whether a pure consumer has standing under Section 43(a). Indeed, the *Thorn* court distinguished its case from *Colligan* in the following manner:

> In any event, the instant case is readily distinguishable from *Colligan* since Thorn seeks standing not as a consumer but instead as an investor in a bankrupt corporation controlled by individuals who allegedly conspired to injure that corporation through false advertising.

*Id.* at 933.

▪ Clearly, the Loys are pure consumers of Armstrong's carpeting. Thus *Thorn* is not controlling. In addition, the Loys are also not competitors of Armstrong. Therefore, the only remaining issue is whether the Loys have standing under Section 43(a) as persons with a "reasonable interest" to be protected under the statute.

Since *Thorn,* the Third Circuit has not addressed pure consumer standing or the "reasonable interest" test under Section 43(a). Thus, in order to determine if consumers like the Loys have a "reasonable interest" to be protected under Section 43(a), the court will have to look for guidance from other district courts within the Third Circuit as well as other federal circuits.

Two district courts within the Third Circuit have found that although a consumer may bring suit under Section 43(a), that consumer must show a reasonable *commercial* interest which is subject to an injury because of a Lanham Act violation. In *Serbin v. Ziebart International Corp.,* 24 U.S.P.Q.2d 1957, 1992 WL 415248 (W.D.Pa.1992), the court was asked to decide whether consumers who purchased the defendant's automobile rust protection service had standing to assert a claim under Section 43(a). The plaintiffs claimed they purchased the service because of alleged false claims in the defendant's advertisements. After reviewing *Thorn, Ditri v. Coldwell Banker Residential Affiliates, Inc.,* 954 F.2d 869 (3d Cir.1992) and *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093 (9th Cir.1992), the *Serbin* court found that the primary purpose of Lanham Act is to protect commercial interests. Thus, it adopted the position that "standing under § 43(a) exists where the interest asserted by the plaintiff is a commercial interest protected by the Lanham Act." *Serbin,* 24 U.S.P.Q.2d at 1959, 1992 WL 415248 at *2, quoting, Waits,* 978 F.2d at 1109. The *Serbin* court then dismissed the case because it found that the consumer in that particular action had no reasonable commercial interest which the Lanham Act was designed to protect.

The other district court case within the Third Circuit that held that a consumer must have a reasonable commercial interest to have standing under the Lanham Act was *Guarino v. Sun Co.,* 819 F.Supp. 405 (D.N.J. 1993). In *Guarino,* the plaintiff was a retail purchaser of gasoline who claimed that she was injured by the defendants' alleged false advertisements that its high-octane gasoline gave better car performance. The *Guarino* court reviewed the same cases as those reviewed in *Serbin.* The court agreed with *Serbin* that a commercial interest was required to have standing under the Lanham Act. *Guarino,* 819 F.Supp. at 407. The *Guarino* court held that plaintiff's interest to be free of misleading advertising that induced them to buy the high-octane gasoline was not a commercial interest and thus that plaintiff did not have standing under Section 43(a). *Id.* at 409. *Guarino* also noted that:

> To accept plaintiff's argument (that commercial interest not necessary) would be to convert the Lanham Act from a regulation of commercial interests and unfair competition to a catchall consumer protection statute that could apparently be used to challenge any misleading advertising. While such an expansion of the Act's cov-

erage may be desirable, that is for Congress, not the court to decide.

*Id.* at 409–410 (footnotes omitted).

One district court within the Third Circuit in *Maguire v. Sandy Mac, Inc.,* 138 F.R.D. 444 (D.N.J.1991) ("*Maguire I*") has found that Section 43(a) does not require a consumer to have a commercial interest in order to have standing. *Maguire I* involved allegations that the defendant meat wholesaler fraudulently represented that its meats met United States Department of Agriculture standards. The *Maguire I* court held that consumers who believed they were injured by such representations had standing because they had a reasonable interest in being protected from such misrepresentations. *Id.* at 448. *Maguire I* did not require any reasonable commercial interest on the part of the plaintiffs.

After the *Maguire I* court initially granted plaintiff's request to certify a class that consisted of ultimate consumers of defendant's ham products, the matter was transferred to another judge within the District of New Jersey. In *Maguire v. Sandy Mac, Inc.,* 145 F.R.D. 50 (D.N.J.1992) ("*Maguire II,*"), the court decertified the class. Although *Maguire II,* when decertifying the class, never reached the issue of consumer standing under Section 43(a), the court expressed its doubts about extending standing to consumers without a commercial interest. The court stated that such an extension of the Lanham Act would run the risk of converting the federal courts into a "veritable small claims court." *Maguire II,* 145 F.R.D. at 53–54.

The Ninth Circuit in *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093 (9th Cir.1992), discussed the type of interests a plaintiff needed in order to have standing to pursue a Section 43(a) claim. *Waits* held that the interest depended on which of the two different prongs of Section 43(a) a plaintiff was pursuing. *Id.* at 1109. If a plaintiff pursued a false association claim under Section 43(a)(1), a non-competitor needed a commercial interest in the product wrongfully identified or in the misused trademark. *Id.* However, if a plaintiff pursued a false advertising claim under Section 43(a)(2), only competitors had standing. *Id.* Thus, in the Ninth Circuit, a

non-competitor only has standing to pursue a Section 43(a) claim in a limited circumstance and where the interest asserted by the plaintiff is a commercial interest.

The court has reviewed three treatises that have examined whether a consumer has standing to pursue a Section 43(a) claim. Two treatises have stated that generally a consumer has no right or action under Section 43(a). *See* 1A Callman *Unfair Competition, Trademarks and Monopolies,* § 5.04; McKenney & Long, *Federal Unfair Competition: Lanham Act § 43(a),* § 9.03[3]. The one treatise which recognizes that a consumer can bring suit has stated that a consumer not damaged in a commercial sense ordinarily does not have standing under Section 43(a). *See* 1A Gilson, *Trademark Protection and Practice,* § 8.16[1][d].

The court has also independently reviewed the legislative history of Section 43(a). The legislative history clarifies that the 1988 amendments to Section 43(a) codified previous judicial interpretation given to the provision. S.Rep. No. 515, 100th Cong., 2d Sess. at 40, U.S.Code Cong. & Admin.News 1988 at 5577, 5602. As of that date, no appellate court had granted standing to any pure consumer such as the Loys. During the 1988 legislative process, bills were introduced which would have specifically granted or denied consumer standing under the statute. *See e.g.* § 1883, 100th Cong., 2d Sess. (1988), 133 Cong.Rec. 16546 (1987) (limit standing to commercial competitors); H.R. 5372, H.R.Rep. No. 1028, 100th Cong., 2d Sess. (1988) (explicitly granting consumers standing to sue). Unfortunately, such bills were eliminated from the amendments that were passed. Instead, the legislative history states that it was the intention that "standing under Section 43(a) ... should continue to be decided on a case-by-case basis and that the amendments ... made to the legislation with respect to these issues should not be regarded as either limiting or extending applicable decisional law." S.Rep. No. 515, 100th Cong., 2d Sess. at 41, U.S.Code Cong. & Admin.News 1988 at 5604.

Since the intent of the Lanham Act is to protect persons engaged in commerce against unfair competition (15 U.S.C.

§ 1127), the court adopts the view that a consumer must have a reasonable commercial interest in order to have standing to pursue a Section 43(a) claim. As the other courts above have noted, to adopt a different view would have the effect of converting the Lanham Act from a statute designed to protect commercial interests and unfair competition to a catch-all consumer protection statute. Also, allowing pure consumers to have standing under Section 43(a) would make thousands of such suits possible in federal courts. However, the court's review of this issue has disclosed no such reported opinions of such wide magnitude. In this instance, the court finds that the Loys, as the named plaintiffs, do not have a commercial interest since they are pure consumers who have suffered injuries that are purely personal and not commercial in nature. Thus, the court finds that the Loys lack standing to assert a Section 43(a) claim.

In Paragraph 41 of the amended complaint, the Loys allege that "many of the members of the Class use their carpeting in their business and have suffered commercial injury as a result of defendant's conduct." Am.Compl. ¶ 41. "Standing must be personal to and satisfied by those who seek to invoke the power of federal courts." *O'Shea v. Littleton*, 414 U.S. 488, 493, 94 S.Ct. 669, 674, 38 L.Ed.2d 674 (1974). A class representative cannot acquire standing by virtue of bringing a class action and relying on the characteristics of hypothetical class members. *See O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675; *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–551, 7 L.Ed.2d 512 (1962); *See also*, 1 Newberg on Class Actions § 2.05 (2d Ed.1985). Because individual standing requirements constitute a threshold inquiry, the proper procedure when the class representative lacks individual standing is to dismiss the complaint, not to deny the class for inadequate representation. 1 Newberg on Class Actions § 2.09.

In this instance, the court has found that the Loys lack individual standing under Section 43(a). Thus, the court will dismiss that count of the complaint. Since there is no available claim under Section 43, there is no further basis for federal jurisdiction and only the supplemental claims remain. Under *Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal court utilizing its discretion should consider and weigh the values of judicial economy, convenience, fairness and comity in order to decide whether to continue to exercise jurisdiction over supplemental claims when the federal law claims have dropped out of the lawsuit. After considering and weighing these values, the court will exercise its discretion and dismiss the entire complaint without prejudice to the Loys' rights to pursue this litigation in state court.

### (b) *Adequacy of Lanham Act Count*

If the court had found that the Loys had standing under Section 43(a), Armstrong asserts that the Loys failed to adequately allege a Section 43(a) violation. In light of the above holding that the Loys do not have standing, the court is not required to address the merits of this allegation.

### ORDER

**AND NOW**, this 15 day of November, 1993, upon consideration of the defendant's motion to dismiss, and the plaintiffs' response thereto, **IT IS HEREBY ORDERED** that the defendant's motion **IS GRANTED** and that the complaint is dismissed without prejudice to the plaintiffs' right to pursue this action in state court.

**IT IS FURTHER ORDERED THAT THIS CASE IS CLOSED FOR STATISTICAL PURPOSES.**