Peggy **CROMER**, Robert **Martin**, Lisa **Martin**, and Meagan **Martin**, infant by and through her next friend, Robert **Martin**, Plaintiffs,

v.

**LOUNSBURY CHIROPRACTIC OFFICES, INC.,** and Frances **Lounsbury**, an individual, Defendants.

Civ. A. No. 1:94–0258.

United States District Court, S.D. West Virginia, at Bluefield.

Oct. 14, 1994.

Thomas L. Berry, David C. Smith, Johnston, Holroyd & Associates, Princeton, WV, for plaintiffs.

Don R. Sensabaugh, Jr., Robert B. Paul, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for defendants.

## *OPINION*

FABER, District Judge.

### I. *Introduction*

In this civil action filed on March 31, 1994, the plaintiffs combine claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, with several causes of action under West Virginia law. The sole basis for federal jurisdiction is plaintiffs' contention that this action presents a federal question under 28 U.S.C. § 1331 because it "arises under" the laws of the United States due to the Lanham Act claim. Plaintiffs also contend that this court has supplemental jurisdiction over the related state law claims. The defendants have moved to dismiss plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the Complaint fails to state any claim under the Lanham Act and that, without the Lanham Act claim, this court lacks supplemental jurisdiction over the related state claims.

### II. *Statement of the Case*

Defendant Frances Lounsbury ("Dr. Lounsbury") is a chiropractor who practices in Princeton, Mercer County, West Virginia, in the corporate form of Lounsbury Chiropractic Offices, Inc., which is also a named defendant.

Peggy Cromer ("Cromer"), one of the plaintiffs, received three bullet wounds in 1976 as a result of a domestic altercation, one of which damaged her spinal cord and permanently paralyzed her legs. Beginning in September of 1991, Cromer was treated by Dr. Lounsbury who allegedly represented to Cromer that chiropractic treatments could remove nerve blockages and cause her to regain the use of her legs. In June of 1992, Dr. Lounsbury proposed to Cromer that Cromer appear in a television advertisement as a means of payment by Cromer of part of the cost of the chiropractic treatments she was receiving. According to the Complaint, Cromer was led to believe that she would be shown simply as a patient receiving care from Dr. Lounsbury when, in fact, the television advertisement falsely represented to the public that Cromer had regained the ability to walk as a result of the treatments. Cromer did not discover the true nature of the advertisement until several months later when she viewed it on television, causing her emotional distress and mental anguish. In addition to constituting false advertising in violation of the Lanham Act, Cromer claims the ads violated the Lanham Act by tortiously appropriating her name and likeness without her permission to the gain of the defendants.

The other plaintiffs are Meagan Martin, an infant, and her parents, Robert and Lisa Martin. Meagan Martin suffered from a congenitally malformed hip socket which caused a chronic dislocation of the bones in her hip. The Complaint alleges that on about June 15, 1992, Robert and Lisa Martin took their daughter, who was then two years old, to Dr. Lounsbury for the purpose of examination and a second opinion. An orthopaedic surgeon was recommending immediate surgery. Beginning in June 1992 and continuing through January 1993, Dr. Lounsbury treated Meagan Martin, representing to

her that her condition was the result of pinched nerves in her back which could be successfully treated through chiropractic without surgery. The Complaint also charges that on or about December 1992, Dr. Lounsbury approached Robert and Lisa Martin with the proposition that they appear with their child, Meagan, in a television advertisement to celebrate the "infant child's miraculous progress." For several months thereafter, Dr. Lounsbury published the advertisement by broadcasting it on television. The advertisement was broadcast on or about the same day that Meagan Martin had surgery performed on her in a hospital in Kentucky and was viewed on that date by her father, causing him extreme emotional distress. The advertisements involving Meagan Martin are said to violate the Lanham Act in the same manner that plaintiff Cromer claims the advertisements concerning her violated that Act.

The alleged violations of the Lanham Act are joined with counts of the Complaint charging, for the same course of conduct by the defendants, torts under West Virginia law, including fraudulent misrepresentation, tortious outrage, medical malpractice and invasion of privacy.

### III. The Standard on a Rule 12(b)(6) Motion

For purposes of a motion to dismiss under Rule 12(b)(6), the Complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheur v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.,* 991 F.2d 94 (4th Cir.1992). Dismissal is justified only when the allegations of the complaint itself clearly show that the plaintiff does not have a claim. 5A Wright, Miller & Cooper, *Federal Practice & Procedure* § 1357 344–345 (2d ed. 1990).

### IV. Plaintiffs' Lanham Act Claims

While it is now relatively settled that consumers have no standing to sue for false advertising under the Lanham Act,[*] the precise factual situation presented here appears to be one of first impression in the Fourth Circuit. Defendants argue in support of their motion to dismiss that the Lanham Act protects only competitors or those who have suffered commercial damages. Plaintiffs counter that the plain language of the statute gives them standing to sue. On its face, the statutory language lends support to plaintiffs' position. 15 U.S.C. § 1125(a)(1) reads as follows:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

In contrast to most statutes, however, the Lanham Act contains a specific statement of purpose. In the last paragraph of 15 U.S.C. § 1127, Congress expresses that purpose:

The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair

---

[†] *See, Serbin v. Ziebart Int'l Corp., Inc.,* 11 F.3d 1163 (3d Cir.1993), and cases discussed therein.

competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

At least one appellate court has found this language to be a conclusive expression of congressional intent to confine the Act's application to actions involving commercial interests. In that case, *Halicki v. United Artists Communications, Inc.,* 812 F.2d 1213 (9th Cir.1987), the court said:

The final section of the Lanham Act—in a passage unusual, and extraordinarily helpful, in declaring in so many words the intent of Congress—states that "the intent of this chapter is to regulate commerce within the control of Congress ... to protect persons engaged in such commerce against unfair competition." We quote the operative language. The rest of the declaration of intent relates to the use of trademarks and is not relevant here. The statute is directed against unfair competition. To be actionable, conduct must not only be unfair but must in some discernible way be competitive....

If Section 43(a) is not confined to injury to a competitor in the case of a false designation, it becomes a federal statute creating the tort of misrepresentation, actionable as to any goods or services in commerce affected by the misrepresentation. As one treatise suggests, the Lanham Act then would be similar to French, German and Swiss law where, by virtue of a general code clause, in any suit in tort or contract the violation of good morals may become an issue. Broadening the Act from unfair competition to unfair trade "is equivalent" to the complete dilution of the concept of unfair competition. Callman, *Unfair Competition, Trademarks and Monopolies,* (1981 ed., 1986 supp.) § 209.

In *Halicki,* a movie producer's Lanham Act claim against theaters for advertising his PG rated movie as having an R rating was held not actionable in the absence of proof

that he had been injured by a competitor. Noting that the plaintiff might have a claim for breach of contract if he could prove his allegations, the court declined to "mutilate a federal statute and frustrate express congressional intent by giving him a forum [under the Lanham Act.]" *Id.* at 1215.

Section 43(a) of the Lanham Act has been described as having two "prongs" which may be labeled, respectively, "false association" and "false advertising." *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1047, 122 L.Ed.2d 355 (1993). Plaintiffs' Complaint can fairly be said to state causes of action under each prong. The advertisements are alleged to falsely portray the plaintiffs and also to associate plaintiffs with Dr. Lounsbury in a way which is misleading or inaccurate. In *Waits,* the United States Court of Appeals for the Ninth Circuit established a different test for each prong of section 43(a). To state a false advertising claim, the court held, the plaintiff must be a competitor. To state a false association claim, the plaintiff need not be a competitor, but must have a commercial interest in the misused product. *Id.* at 1109.

Other courts have rejected the "two-prong" analysis of the *Waits* case. *See, e.g., Guarino v. Sun Co.,* 819 F.Supp. 405 (D.N.J. 1993). The leading cases, however, consistently hold that the Lanham Act protects only commercial interests.

The fountainhead case is *Colligan v. Activities Club of New York, Ltd.,* 442 F.2d 686 (2d Cir.), *cert. denied,* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971). In that case, the court, relying on the congressional statement of purpose contained in the Act and the Act's legislative history, held that students who were allegedly deceived by false advertising by an interstate ski tour service had no standing to sue. The court said that the purpose of the Lanham Act "is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct." *Id.* at 692.

While the Third Circuit refused to follow *Colligan* in *Thorn v. Reliance Van Co.,* 736 F.2d 929 (3d Cir.1984), holding that the court

in *Colligan* had read the Lanham Act too restrictively, subsequent cases from that circuit have, nevertheless, restricted protection of the Lanham Act to commercial interests. The most recent case is *Serbin v. Ziebart International Corp.*, 11 F.3d 1163 (3d Cir. 1993), which held that consumers who purchased high octane gasoline and rust protectant coverage for automobiles in reliance on false advertising had no standing to sue.

The cases now generally hold that, to have standing to sue under the Lanham Act, a party must have "a reasonable interest to be protected" against activities that violate the Act. *See, Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir.1989); *Berni v. International Gourmet Restaurants of America*, 838 F.2d 642 (2d Cir.1988); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980); *Quabang Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir.1977). The protected activities in each of these cases involved a commercial interest.

The Fourth Circuit Court of Appeals implicitly approved restriction of standing under the Lanham Act to commercial interests in *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir.1993), where it quoted the following language from *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 230 (3d Cir.1990): "The Lanham Act is primarily intended to protect commercial interests.... [I]t provides a private remedy to a *commercial* plaintiff who meets the burden of proving that its *commercial* interests have been harmed by a competitor's false advertising." (emphasis supplied).

The interests the plaintiffs seek to protect in this case are not commercial interests. Plaintiffs are not in competition with the defendants, nor do they have any business interests which they claim have been damaged by the defendants' tortious acts. Damages claimed by the plaintiffs are purely personal—no commercial interests whatsoever are involved.

This is not to say that the interests of plaintiffs at stake here are not substantial. Those interests simply lie beyond the scope of the Lanham Act and, consequently, beyond the scope of this court's jurisdiction. Furthermore, those interests appear to be adequately protected under state law. West Virginia cases clearly hold that the appropriation of a person's name or likeness is actionable as a tort. *See Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1984). For this court to hold that such interests are also embraced by the Lanham Act would be to expand the scope of that Act beyond anything its drafters intended. Such an expansion, which would supplement or supplant state law with overlapping federal causes of action, can be legitimately accomplished only through the legislative process.

### V. *Conclusion*

Plaintiffs' Lanham Act claims must therefore be dismissed. Having dismissed the Lanham Act claims for lack of standing at an early stage of the litigation, the supplemental state claims should likewise be dismissed in the absence of an independent basis for federal jurisdiction. 28 U.S.C. § 1367(c)(3); *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 699, n. 2 (7th Cir.1989).

A separate dismissal Order will be entered consistent with this Opinion.